UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FRANK S., | ) | |
| | ) | |
| Plaintiff, | ) | No. 20-cv-3429 |
| | ) | |
| v. | ) | Magistrate Judge Susan E. Cox |
| | ) | |
| KILILO KIJAKAZI, Acting Commissioner of the Social Security Administration, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Frank S.[1] appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for disability insurance benefits. The parties have filed cross motions for summary judgment.[2,3] As detailed below, Plaintiff's motion for summary judgment (dkt. 18) is DENIED and Defendant's motion for summary judgment (dkt. 23) is GRANTED. The final decision of the Commissioner is affirmed.

1. **SOCIAL SECURITY REGULATIONS AND STANDARD OF REVIEW**

ALJs are required to follow a sequential five-step test to assess whether a claimant is legally disabled. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; and (3) whether the severe impairment (or combination of impairments) meets or equals one considered conclusively disabling such that the claimant is impeded from performing basic work-related activities. 20 C.F.R.

---

[1] In accordance with Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff only by his first name and the first initial of his last name(s).

[2] "Defendant's Response to Plaintiff's Motion for Summary Judgment" (dkt. 23) has been construed as a motion for summary judgment by the Court as it seeks precisely that relief in its *ad damnum* paragraph.

[3] Local Rule 5.2(e) sets the spacing requirements for documents filed in the Northern District of Illinois and Judge Cox's Standing Order on Social Security Cases provides the parties a 25-page limit for their briefs. Accordingly, it was improper (and there was no need) for Plaintiff's counsel to trim his margins and line spacing in such a drastic manner to attempt to limit his opening brief or to greatly enlarge the margins on his reply brief. (*See* dkts. 18, 24.)

§ 404.1520; 20 C.F.R. § 404.1523; 20 C.F.R. § 404.1545; 20 C.F.R. § 416.920(a)(4)(i)-(v). If the impairment(s) does meet or equal this standard, the inquiry is over and the claimant is disabled. 20 C.F.R. § 416.920(a)(4). If not, the evaluation continues and the ALJ must determine (4) whether the claimant is capable of performing his past relevant work. *Cannon v. Harris*, 651 F.2d 513, 517 (7th Cir. 1981). If not, the ALJ must (5) consider the claimant's age, education, and prior work experience and evaluate whether she is able to engage in another type of work existing in a significant number of jobs in the national economy. *Id*. At the fourth and fifth steps of the inquiry, the ALJ is required to evaluate the claimant's RFC in calculating which work-related activities she is capable of performing given his limitations. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). In the final step, the burden shifts to the Commissioner to show that there are jobs that the claimant is able to perform, in which case a finding of not disabled is due. *Smith v. Schweiker*, 735 F.2d 267, 270 (7th Cir. 1984).

      The Court's scope of review here is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence and the proper legal criteria. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation and signals omitted). The Court reviews the ALJ's decision directly, but plays an "extremely limited" role in that the Court may not "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or substitute (its) own judgment for that of the Commissioner." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021). Although the Court reviews the ALJ's decision deferentially, the ALJ must nevertheless "build an accurate and logical bridge" between the evidence and his conclusion. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (citation omitted).

2.  **RELEVANT BACKGROUND**

Plaintiff worked as a manufacturing engineer (or an adjacent job) for 19 years. (R. 331.) In 2016, Plaintiff was laid off during a corporate restructuring where his company acquired another company "extremely heavy in engineers." (R. 47.) According to Plaintiff, as part of this process, everyone was required to reapply for their jobs, and Plaintiff was not rehired. (*Id.*) Plaintiff looked for other similar work after he was laid off, but he was unable to find a job. (R. 47-48.)

On March 17, 2017, Plaintiff applied for Disability Insurance Benefits ("DIB"). (R. 271-72.) Plaintiff alleged disability as of July 31, 2016. (R. 271.) On July 24, 2017, Plaintiff's claim for DIB was denied. (R. 123.) On August 8, 2017, Plaintiff presented to Family Medicine Richmond, seeking to establish care after he filed for disability and got denied. (R. 22, 28, 491-93, 532.) Plaintiff reported no quality-of-life complaints, or associated signs or symptoms. (R. 28, 491-93.) Plaintiff established care with Dr. Jennifer Belluci-Jackson, M.D., as his primary care physician, telling her he "want[ed] multiple referrals." (R. 491.)

Plaintiff appealed the denial of his DIB application and appeared at a June 20, 2019 Administrative Hearing before Administrative Law Judge ("ALJ") Lee Lewin. (R. 40-108.) On July 12, 2019, ALJ Lewin issued an unfavorable decision, concluding that Plaintiff had not established he was disabled during the period from his onset date through the date of the ALJ's decision. (R. 15-31.) Plaintiff requested Appeals Council review, which was denied on April 27, 2020. (R. 1-3.) Thus, the Decision of the Appeals Council is the final decision of the Commissioner, reviewable by the District Court under 42 U.S.C. § 405(g). *See* 20 C.F.R. § 404.981; *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005). Plaintiff, through counsel, filed the instant action on June 11, 2020, seeking review of the Commissioner's decision. (Dkt. 1.)

3.  **THE ALJ'S DECISION**

At Step 1, the ALJ found that Plaintiff had not engaged in substantial gainful activity since

his alleged onset date of July 31, 2016. (R. 17.) At Step 2, the ALJ found that Plaintiff had the severe impairments of ventral hernia; degenerative disc disease of the lumbar spine and cervical spine; and degenerative joint disease of the right knee, left hip, and right shoulder. (R. 18.) The ALJ determined that Plaintiff's benign paroxysmal positional vertigo ("BPPV") was a non-severe impairment. *Id*. At Step 3, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments of 20 C.F.R. Part 404, Subpart P, App'x 1. (R. 19.) Before Step 4, the ALJ found that Plaintiff had the residual functional capacity ("RFC") for light work with the exception of no climbing ladders, ropes and scaffolds; only occasional stooping, crouching, crawling, kneeling, balancing, and climbing ramps and stairs; no concentrated exposure to hazards, including dangerous moving machinery and unprotected heights; and only frequently reaching above shoulder level with the right upper extremity. (R. 19-30.) At Step 4, the ALJ found Plaintiff capable of performing his past relevant work as a Parts Manager GP and Manufacturing Engineer. (R. 30.) Therefore, the ALJ did not need to reach Step 5. Because of these determinations, the ALJ found Plaintiff not disabled under the Act. (R. 31.)

**4.    DISCUSSION**

Plaintiff raises three issues with the ALJ's opinion: (1) that the ALJ erred in evaluating select medical opinions; (2) that the ALJ inappropriately assessed Plaintiff's subjective statements; and (3) that the ALJ erred in assessing Plaintiff's RFC.

**4.1    The ALJ Adequately Assessed the Medical Opinions**

Plaintiff complains the ALJ inappropriately assessed the medical opinions of medical expert Dr. Gilberto Munoz, M.D., M.P.H., and Plaintiff's primary care physician, Dr. Jennifer Belluci-Jackson, M.D.

### 4.1(a) The ALJ Reasonably Considered Dr. Munoz's Opinions

Dr. Gilberto Munoz, M.D., M.P.H., is the medical expert hired by the Social Security Administration to testify in this matter. (R. 40.) Dr. Munoz reviewed the complete record and testified at the June 2019 Administrative Hearing. (R. 66.) Dr. Munoz testified that he specialized in rheumatology and professional medicine, and Plaintiff had no objection to Dr. Munoz's qualifications at that time. *Id*. Dr. Munoz identified Plaintiff's "significant medical conditions" as: cervical and lumbar spine impairments; a history of knee surgeries; bilateral knee arthritis that was "very mild" on the left but more severe on the right; and mild arthritis in the right shoulder. (R. 66-68). He found these impairments to be mild to moderate in severity. (R. 67.) Regarding functional limitations, Dr. Munoz agreed with the opinions of the state agency consultants, Drs. Kenney and Madison, that Plaintiff could perform a range of light work despite his impairments. (R. 69-70; *see also* R. 114-15, 126-27.) However, Dr. Munoz recommended further restricting Plaintiff to occasional postural activities; no climbing of ladders, ropes, and scaffolds or concentrated exposure to hazards; and frequent reaching above the right shoulder. (R. 70.)

The ALJ gave significant weight to Dr. Munoz's opinion, and some weight to the opinions of Drs. Kenney and Madison, when determining Plaintiff's RFC. (R. 30.) The ALJ's RFC assessment matches Dr. Munoz's opinion, and is entirely consistent with the opinions of Drs. Kenney and Madison that Plaintiff could perform the full range of light work. (R. 19, 69-70, 114-15, 126-27.) Explaining why he gave Dr. Munoz's opinion significant weight, the ALJ first noted that Dr. Munoz is a specialist "who is familiar with SSA policy and regulations." (R. 30; *see* 20 C.F.R. § 404.1513a(b)(1) (recognizing that "Federal or State agency medical…consultants are highly qualified and experts in Social Security disability evaluation."), and § 404.1527(c)(5) (ALJs may give more weight to a medical opinion from a specialist)). The ALJ also noted that Dr. Munoz reviewed the complete record, and found that he supported his opinion by providing a detailed

5

explanation with references to record evidence. (R. 30; *see* 20 C.F.R. § 404.1527(c)(3)-(4).

ALJs are "entitled to rely upon" reviewing doctors' opinions in assessing a claimant's RFC. *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004). "It is appropriate for an ALJ to rely on the opinions of physicians…who are also experts in social security disability evaluation." *Flener v. Barnhart*, 361 F.3d 442, 448 (7th Cir. 2004). Moreover, "[a]n ALJ has substantial discretion regarding which doctor to believe" when medical opinions conflict. *Wilson v. Berryhill*, 737 F. App'x 286, 290 (7th Cir. 2018) (citing *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001)). The Court finds the ALJ acted well within his substantial discretion in accepting Dr. Munoz's opinion and giving some weight to the opinions of Drs. Kenney and Madison. *See Wilson*, 737 F. App'x at 290; *Apke v. Saul*, 817 F. App'x 252 (7th Cir. 2020) (ALJ's reliance on a medical expert's opinion over treating doctors' opinions is "within the ALJ's discretion…and appropriate."); *see also*, *Gebauer v. Saul*, 801 F. App'x 404, 408 (7th Cir. 2020) (it is "prudent" for ALJ to rely on medical expert). Dr. Munoz reviewed the complete record, which "strengthens the weight" of his conclusions. *Flener*, 361 F.3d at 448. Moreover, the Court finds that Dr. Munoz's opinion, "buttressed by the State Consultants' opinions," constitutes "an adequate evidentiary foundation" for the RFC finding. *White v. Barnhart*, 415 F.3d 654, 659 (7th Cir. 2005) (holding that a medical expert's "opinion, buttressed by the State Consultants' opinions, was an adequate evidentiary foundation for the [RFC] finding.").

First, Plaintiff disputes the relevancy of Dr. Munoz's qualifications as a rheumatologist. (Dkt. 18, p. 10.) By failing to object at the Administrative Hearing (R. 66), Plaintiff has waived this argument. (Regardless, the Commissioner is correct that both Dr. Munoz's specialties are relevant to the impairments underpinning Plaintiff's disability claim. *See* dkt. 23, p. 5.) The Court finds no error in the way the ALJ considered Dr. Munoz's status as a specialist.

Next, Plaintiff incorrectly claims Dr. Munoz "refus[ed]" to even consider subjective

6

statements about pain" and "only looked at objective facts" rather than reviewing "the complete record." (Dkt. 18, pp. 11-12.) This misconstrues Dr. Munoz's testimony, who twice verified he reviewed the complete medical file. (R. 66, 71.) As the ALJ noted, Dr. Munoz's task was to testify based on the medical record, not "to speculate as to the claimant's credibility." (R. 76.) Therefore, when asked whether he considered Plaintiff's subjective allegations such as pain, Dr. Munoz confirmed he *did* "consider" pain allegations, but found that Plaintiff's allegations did not correlate to the medical findings of record. (R. 73.) Similarly, when questioned about specific symptoms of numbness, weakness, and tingling, Dr. Munoz again explained that he "considered" those symptoms, but did not find objective evidence "that correlates with those symptoms." (R. 74.) While Dr. Munoz explained that "those are symptoms of radiculopathy" and "there is no study in the medical records that proves that [Plaintiff] has radiculopathy," he nevertheless confirmed he was "not discounting" Plaintiff's subjective reports he felt these symptoms. (R. 75-76.) This evaluation is precisely the type permitted by applicable Social Security regulations, which explain a claimant's "statements about [their] pain or other symptoms will not alone establish [they] are disabled," there must be "objective medical evidence" that an impairment "could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. § 404.1529(a). Accordingly, as Dr. Munoz repeatedly confirmed he considered Plaintiff's subjective symptom reports when forming his opinion, but determined these subjective symptoms to be unsupported by medical evidence, the Court declines to remand on this basis.

Next, Plaintiff faults the ALJ for not seeking an MRI in response to Dr. Munoz's statement that such imaging would have been helpful in assessing the severity of Plaintiff's shoulder and knee impairment. (R. 69.) As an initial matter, Dr. Munoz never testified he would be *unable* to provide an opinion without such evidence, and he did in fact offer an opinion about Plaintiff's RFC. (R. 69-70.) The Court can find no support for the notion that the ALJ was obliged, under these

circumstances, to seek additional evidence. Moreover, it is Plaintiff's burden, not the ALJ's, to submit evidence to support his disability claim. *Eichstadt v. Astrue*, 534 F.3d 663, 668 (7th Cir. 2008). Plaintiff confirmed the record in this case was complete. (R. 40.) Dr. Munoz offered an opinion based on that complete record; no "gap" in the evidence hindered his ability to render that opinion. Further, because the record here contained adequate evidence on which to base his decision, the ALJ was not obligated to obtain any additional information. *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004) (ALJ may refrain from re-contacting a medical expert when sufficient evidence exists to make a disability determination); *see also*, *Britt v. Berryhill*, 889 F.3d 422, 427 (7th Cir. 2018) (same); *Frank B. v. Saul*, 2019 WL 6307651, at *8 (N.D. Ill. Nov. 25, 2019) (same). The Court will not remand on this basis.

In sum, the Court finds the ALJ adequately addressed Dr. Munoz's opinions; the Court will not overturn the ALJ's decision on this basis.

### 4.1(b)     The ALJ Reasonably Discounted Dr. Bellucci-Jackson's Opinions

Dr. Jennifer Belluci-Jackson, M.D., was Plaintiff's primary care provider; Plaintiff presented to her practice in August 2017 seeking to establish care after his application for disability was denied. (R. 22, 28, 491-93, 532.) Plaintiff reported no quality-of-life complaints, or associated signs or symptoms. (R. 28, 491-93.) Plaintiff told Dr. Belluci-Jackson he "want[ed] multiple referrals." (R. 491.) One year later, in August 2018, Dr. Belluci-Jackson signed off on a Residual Functional Capacity Questionnaire stating that Plaintiff was in pain 100% of the time.[4] (R. 533.) The ALJ noted

---

[4] The statement that Plaintiff's "pain is 100% of time" does not appear to be in Dr. Belluci-Jackson's handwriting. In fact, the August 16, 2018 RFC Questionnaire signed off by Dr. Belluci Jackson is filled out in two sets of handwriting. The report does not detail who the second author is, but large portions of the report appear to have been filled out by Plaintiff himself. *Compare* RFC Questionnaire (R. 532-535) *with* Plaintiff's Work History Report (R. 331-338). The Court finds the RFC Questionnaire leaves unidentified the identity of the individual who provided the majority of the opinions therein, further calling into question those opinions. Additionally, the RFC Questionnaire states that Dr. Belluci-Jackson had been treating Plaintiff for two years when she had, in fact, only been seeing him for slightly less than a year at the time she completed the questionnaire. *Compare* R. 493 (establishing care August 8, 2017) and R. 491 (first visit with Dr. Belluci-Jackson on August 24, 2017) *with* R. 532-35 (questionnaire dated August 16, 2018 yet purporting that Dr. Belluci-Jackson had seen Plaintiff for two years).

these facts in his decision. (R. 22, 28, 30.)

Reading the ALJ's decision as a whole, the ALJ found that Dr. Bellucci-Jackson's opinion was unsupported by physical findings. (R. 30; s*ee also, generally,* R. 21-29; *Rice*, 384 F.3d at 370 ("it is proper to read the ALJ's decision as a whole"); 20 C.F.R. § 404.1527(c)(3) (ALJs may discount opinions unsupported by medical findings.) Namely, the treatment notes did not show any problems with fingering, holding the head up, or elevating the legs that Dr. Bellucci-Jackson endorsed. (R 30, 534-35.) The ALJ also found Dr. Bellucci-Jackson's opinion inconsistent with the overall record that documented mostly normal to mild findings. (R. 30; *see* 20 C.F.R. § 404.1527(c)(4) (ALJs may discount opinions inconsistent with the overall record.) Overall, the ALJ found that treatment notes from general practitioners and specialists "reported mostly benign clinical findings during numerous office visits" during 2017 and 2018. (R. 28 (citing R. 473, 476-77, 479, 482, 486, 488, 491, 493, 529, 539-42, 547-49, 556-58, 562, 616, 618, 621, 624, 627, 633, 636-37).) The ALJ acknowledged Plaintiff's pain complaints and reduced range of motion in the spine, knees, and hip (*see* R. 476-77, 479, 539-42, 615), but observed that exams consistently documented otherwise normal findings including gait, sensation, strength, ambulation, and no indication of significant problems in reaching or with fine and gross manipulation. (R. 28.)

The ALJ's conclusion that Dr. Bellucci-Jackson's opinion was inconsistent with the medical findings is further supported by Dr. Munoz's testimony. (R. 71-72.) The ALJ noted this fact when he recounted that Dr. Munoz addressed Dr. Belluci-Jackson's opinion and testified that the medical findings did not support it. (R. 27.) "When treating and consulting physicians present conflicting evidence, the ALJ may decide whom to believe, so long as substantial evidence supports that decision." *Dixon*, 270 F.3d at 1178. It is not the court's role "to reconsider the weight given to the various medical opinions." *Brumbaugh v. Saul*, 850 F. App'x 973, 977 (7th Cir. 2021). Under substantial evidence review, the Court "cannot reweigh the medical evidence or substitute its

9

judgment for the ALJ's analysis with respect to how the medical opinions should be balanced." *Frank J. v. Saul*, 2020 WL 6447928, at *5 (N.D. Ill. Nov. 3, 2020). Here, the ALJ was entitled to rely on Dr. Munoz's opinion in this way, which provided further support for the lower weight he gave to Dr. Belluci-Jackson's opinions. The Court cannot (and will not) reweigh the medical opinions in this matter.

Plaintiff also alleges error with the ALJ's recitation of Dr. Belluci-Jackson's hand limitations. (Dkt. 18, p. 11.) Plaintiff would have the Court find that Dr. Belluci-Jackson's carpal tunnel diagnosis supports an accommodation for fingering and other hand limitations. *Id*. Yet Dr. Bellucci-Jackson proffered solely right hand limitations, whereas Plaintiff's carpal tunnel syndrome was only disgnoed in the left arm. (R. 618.) And as the ALJ observed, the treatment notes contained "no significant findings regarding…problems with gross and fine manipulation," which Plaintiff does not dispute with contrary medical evidence. (R. 28.) Even if Plaintiff's carpal tunnel diagnosis pertained to the correct hand, "mere diagnosis does not establish functional limitations…or an inability to work." *Allen v. Astrue*, 2011 WL 3325841, at *12 (N.D. Ill. Aug. 1, 2011); *see also Estok v. Apfel*, 152 F.3d 636, 640 (7th Cir. 1998) (pointing to a diagnosis is insufficient). Therefore, Plaintiff's left hand carpal tunnel diagnosis cannot possibly support any right hand limitations. The Court finds no error in this aspect of the ALJ's decision.

Plaintiff also argues that "the ALJ's objections to the Dr. Bellucci-Jackson's recommendations for leg elevation make no sense, as the doctor did not recommend any leg elevation, explaining that Plaintiff would be unable to do so because of pain." (Dkt. 18, p. 12.) Plaintiff is simply wrong on this point; the ALJ never found that Dr. Belluci-Jackson recommended any leg elevation. Plaintiff has misconstrued the ALJ's decision, wherein the ALJ found Dr. Bellucci-Jackson's opinion that Plaintiff "could not elevate legs, due to pain" unsupported by the record because there were "no physical findings regarding…elevating the legs…[and] exams are

overall within normal limits or show mild findings." (R. 30.) Plaintiff again fails to point to any contrary medical evidence. Thus, the Court will not overturn the ALJ's decision on this basis.

Finally, Plaintiff disagrees with the ALJ's conclusion that the treatment findings were predominantly normal, arguing they contained some deficits in range of motion and tenderness. (Dkt. 18, p. 12.) As discussed, the ALJ acknowledged that Plaintiff complained of pain and that treatment notes indicated reduced range of motion, but the ALJ reasonably considered that exams otherwise consistently documented normal findings such as gait, sensation, strength, and ambulation with no noted problems in reaching or gross and fine manipulation. (R. 28.) Thus, the medical record documented both "positive signs and negative signs" and "these were conflicts that the ALJ had to resolve." *Shaun R. v. Saul*, 2019 WL 6834664, at *5 (N.D. Ill. Dec. 16, 2019). The Court finds the ALJ properly "engaged with both sides of the record and weighed the evidence in a different way than plaintiff would have liked," which is not cause for reversal. *Bertha M. v. Saul*, 395 F. Supp. 3d 963, 972 (N.D. Ill. Sept. 17, 2019). The Court finds no error in the way the ALJ weighed the opinion evidence in this case, and declines to reweigh the opinion evidence itself. *Brumbaugh*, 2021 WL 1100562, at *4, *Frank J.*, 2020 WL 6447928, at *5.

In sum, the Court finds the ALJ adequately addressed Dr. Bellucci-Jackson's opinions; the Court will not overturn the ALJ's decision on this basis.

### 4.2 The ALJ Appropriately Assessed Plaintiff's Subjective Statements

Plaintiff also complains the ALJ failed to properly evaluate Plaintiff's subjective statements about the extent of his limitations. The Court disagrees.

The regulations set forth a two-step process for evaluating a plaintiff's statements about his impairments. *See* 20 C.F.R. § 416.929. An ALJ first determines whether a medically determinable impairment "could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. § 416.929(a). If so, the ALJ then "evaluate[s] the intensity and persistence" of the

11

plaintiff's symptoms and determines how they limit the plaintiff's "capacity for work." 20 C.F.R. § 416.929. In applying the second step, the ALJ assesses whether medical evidence substantiates the plaintiff's symptoms. *See* Social Security Ruling ("SSR") l6-3p. If medical evidence does not confirm the intensity and persistence of the claimed symptoms, the ALJ considers a list of non-exhaustive factors. *See id*. An ALJ's assessment of a plaintiff's subjective statements of symptoms need not be flawless and is entitled to deference unless it is "patently wrong," which is a "high burden." *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015); *Turner v. Astrue*, 390 F. App'x 581, 587 (7th Cir. 2010). Only when an ALJ's assessment lacks *any* explanation or support will a court declare it to be 'patently wrong.' *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008).

First, Plaintiff takes issue with the ALJ's treatment of his 2016 layoff. Plaintiff argues the ALJ suggested he cannot possibly have disabling symptoms because he was "laid off." (Dkt. 18, p. 13.) This not at all what the ALJ "suggested" through the factual recitation of the events surrounding Plaintiff's layoff. (R. 20-21, 27-28.) Plaintiff proceeds to argue "[t]he ALJ had no basis for assuming that Plaintiff was laid off for reasons that were unrelated to his diminished physical functioning." *Id*. This is not necessarily true either. At the Administrative Hearing, Plaintiff himself plainly attributed his layoff to a corporate restructuring (*i.e.*, not a medical impairment); he stopped working because he was laid off when his company bought out another company "extremely heavy in engineers," and thus he was not rehired. (R. 20, 47.) Plaintiff also reported to his physician he stopped working in his job as a manufacturing engineer "because he was laid-off." (R. 436.) A reasonable person could make the inference the ALJ did based on this evidence (*i.e.*, Plaintiff was laid off for reasons unrelated to physical functioning). *See Elder*, 529 F.3d at 413. Regardless, the reason Plaintiff remained at or left any given job does not directly correspond to an award or denial of disability benefits by the Commissioner. The implication in the ALJ's refences to Plaintiff's layoff is that Plaintiff was still able to perform all the functions of his job at the time he was laid off,

12

as opposed to a situation where someone quits a job or is fired because they are unable to perform the essential functions of that job. The Court cannot find the ALJ was "patently wrong" on this and will not remand on this basis.

Next, the ALJ concluded that Plaintiff's limited medication and conservative course of treatment were inconsistent with the extent of limitation he alleged. (R. 27-29); *see* 20 C.F.R. § 404.1529(c)(3)(iv)-(v) (ALJs may consider medication, and treatment other than medication, in assessing claimant's symptom allegations). Specifically, the ALJ observed that while a large ventral hernia was diagnosed during the June 2017 consultative examination, the record showed no symptom complaints or treatment for the hernia. (R. 27.) the ALJ further found that the treatment recommended by Plaintiff's providers "has been essentially routine and conservative in nature," as Plaintiff received only "noninvasive" treatment consisting of medication, one right knee injection, and one right shoulder injection. (R. 28 (citing R. 539, 556).) The ALJ highlighted the mismatch in Plaintiff's testimony that he used a cane "anytime when he goes out" with the lack of documentation in the record that Plaintiff used a cane during any of his medical appointments, and his report to his physician of only occasional cane use in August 2017. (R. 28, 51, 457.) Finally, the ALJ considered that Plaintiff did not take any pain medication until October 2017, and he testified that he only used pain medication 2-3 times per week, which the ALJ found inconsistent with Plaintiff's testimony of debilitating pain. (R. 28-29; *see* R. 57, 457, 486.)

The ALJ did not err in discounting Plaintiff's allegations due to this conservative course of treatment. The Seventh Circuit has consistently affirmed that conservative treatment consisting of pain medications and injections is a proper reason to discount a claimant's symptom allegations. *See*, *e.g.*, *Prill v. Kijakazi*, 23 F.4th 738, 749 (7th Cir. 2022); *see also*, *David C. v. Kijakazi*, 2022 WL 602520, at n. 10 (N.D. Ill. Mar. 1, 2022) (collecting cases). Plaintiff cites *Plessinger v. Berryhill*, 900 F.3d 909 (7th Cir. 2018) for the theory that taking multiple, powerful, prescribed, narcotic pain

13

medications can corroborate allegations of incapacitating pain. (Dkt. 18, p. 12, 14.) The facts in *Plessinger* are distinguishable, however, as Plessinger was taking "four different daily pain medications" after failed back surgery, but his spinal stenosis remained symptomatic and "did not respond to injection therapies or other conservative pain management approaches." *Plessinger*, 900 F.3d at 911. In contrast, Plaintiff testified he only uses pain medication 2-3 times per week because he does not like the side effects. (R. 22, 56-60.) Under prevailing case law, the ALJ reasonably found this limited course of treatment inconsistent with Plaintiff's allegedly debilitating pain. (R. 28-29); *see David C.*, 2022 WL 602520, at n. 10. In any event, the ALJ's assessment of Plaintiff's allegations did not need to be flawless, and not all his reasons need be valid so long as enough are.[5] *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009); *Halsell v. Astrue*, 357 F. App'x 717, 722-23 (7th Cir. 2009). Even if the ALJ's reasoning on this point "was not airtight," the Court cannot say his overall finding was "patently wrong." *Matthews v. Saul*, 833 F. App'x 432, 437-38 (7th Cir. 2020) (citing *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)).

Finally, although Plaintiff may wish to downplay the significance of his daily activities, "ALJs are required to assess daily activities" when evaluating a disability claimant's allegations. *Heather M. v. Berryhill*, 384 F. Supp. 3d 928, 936 (N.D. Ill. June 5, 2019); *see* 20 C.F.R. § 404.1529(c)(3)(i). A claimant's daily activities are just that: activities that one engages in in a typical day – they are not meant to equal the functional requirements of a full-time job (particularly since past work is a separate category the ALJ analyzes), but they can and do provide an ALJ insight

---

[5] On this point, the Court must note a concerning phrase used by the ALJ at the beginning of his analysis of how the medical evidence failed to fully support Plaintiff's claims of incapacitation. The ALJ noted that "the medical evidence of record fails to document that [Plaintiff] has received the type of medical treatment one would expect for a totally disabled individual." (R. 27.) The phrase "totally disabled" does not have a place in Social Security disability claims, where an individual must show he is incapable of sustaining full time work, not that he is completely incapacitated. *See*, *generally*, Section 1, *supra*. Regardless, the ALJ adequately detailed enough of the reasoning behind his conclusion that the medical record failed to substantiate Plaintiff's subjective claims. The Court does not find the ALJ's use of the phrase "totally disabled" to be grounds for remand when taking a holistic view of the ALJ's decision here.

into whether a claimant's activities are consistent with their allegations of disability. *Alvarado v. Colvin*, 836 F.3d 744, 750 (7th Cir. 2016) (while taking care not to equate daily activities with the rigorous demands of the workplace, "it is entirely permissible to examine all of the evidence, including a claimant's daily activities, to assess whether 'testimony about the effects of [her] impairments was credible or exaggerated.'") (citations omitted). Contrary to Plaintiff's assertion (dkt. 18, p. 14-15), it does not matter how much "sustained exertion or attention" each of these tasks require, only whether/how consistent an ALJ finds them with a claimant's allegations. *Id*. As the ALJ discussed, Plaintiff reported a wide range of activities including watching television, riding a stationary bike daily, using the computer, walking in the yard, doing chores, showering, caring for two cats, performing personal care independently, preparing meals, doing laundry, mowing the lawn, doing dishes, driving, shopping, managing his finance, visiting his son and girlfriend, hitching and moving a trailer, reading, scanning the internet, going outside, and socializing with neighbors. (R. 29 (citing 342-47).) The ALJ found these activities "not limited to the extent one would expect, given [Plaintiff's] complaints of disabling symptoms and limitations." (R. 29.) Courts in this circuit have affirmed decisions finding similar ranges of activities inconsistent with claimants' allegations. *See*, *e.g.*, *Heather M.*, 384 F. Supp. 3d at 936 (affirming where activities included socializing, chores, shopping, preparing meals, driving, reading, playing board games, and caring for others); *Stetter v. Saul*, 2019 WL 4599932, at *6 (E.D. Wis. Sept. 23, 2019) (ALJ properly considered claimant's ability to care for children, prepare meals, do chores, care for personal needs, socialize, shop, and vacation). Thus, the Court can find no reason to remand the ALJ's analysis of Plaintiff's daily activities.

In sum, the ALJ's discussion of the evidence adequately highlighted the ways in which Plaintiff's assertions varied from the evidence. The ALJ's assessment of Plaintiff's symptoms and accompanying reasoning is well-supported and adequate to support the resulting conclusions (*i.e.*,

supported by substantial evidence). *Barnett*, 381 F.3d at 668. The Court is sufficiently able to assess how the ALJ evaluated Plaintiff's symptoms, as required by SSR 16-3p. Accordingly, the Court finds the ALJ reasonably evaluated Plaintiff's subjective symptoms; the Court declines to remand on this basis.

### 4.3 The ALJ Properly Evaluated Plaintiff's RFC Under SSR 96-8P

In his final argument, Plaintiff alleges the ALJ failed to properly evaluate Plaintiff's residual functional capacity. Again, the Court disagrees.

"[T]he determination of a claimant's RFC is a matter for the ALJ alone – not a treating or examining doctor – to decide." *Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014). The ALJ will assess a claimant's RFC "based on all of the relevant medical and other evidence." 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c). Specifically, under SSR 96-8p, an ALJ's assessment must "[c]ontain a thorough discussion and analysis of the objective medical and other evidence...and set forth a logical explanation of the effects of the symptoms…on the individual's ability to work."

In his decision, the ALJ restricted Plaintiff to a reduced range of light work, limiting him to no climbing ladders, ropes and scaffolds; only occasionally stooping, crouching, crawling, kneeling, balancing, and climbing ramps and stairs; no concentrated exposure to hazards, including dangerous moving machinery and unprotected heights; and only frequently reaching above shoulder level with the right upper extremity. (R. 19-30.) The ALJ cited substantial evidence in support of the residual functional capacity finding, including evidence, discussed above, that reflected normal physical examinations. (R. 29.)

This includes the ALJ's finding that the treatment notes did not indicate any problems with fine or gross manipulation, despite Plaintiff's diagnosis of carpal tunnel syndrome. (R. 28.) Plaintiff has pointed to no medical evidence that any hand and finger limitations were warranted, and the Court has found none. Similarly, Plaintiff has not identified any evidence that his obesity required

16

further restriction, and the ALJ's decision is supported by the opinions of both reviewing medical consultants, who considered obesity and opined that Plaintiff could perform light work. (R. 112, 114, 124, 126); *see Skarbek*, 390 F.3d at 504 (ALJ accounts for obesity by relying on the opinions of doctors who considered it). Regarding attention and concentration, the ALJ found no support for these limitations because no treating or examining sources documented any deficits in attention and concentration. (R. 29.) Plaintiff fails to cite any such findings in any medical treatment note, and the ALJ was not required to credit Dr. Bellucci-Jackson's unsupported opinion to this effect. Lastly, as to Plaintiff's BPPV and/or Meniere's disease diagnoses (with related diagnoses of intermittent vertigo, dizziness, giddiness, and bilateral tinnitus), the ALJ explained that a neurologist opined in November 2017 that Plaintiff did not have Meniere's disease; treatment notes did not indicate any obvious effect on functioning from BPPV; audiology testing was normal; Plaintiff did not seek recommended vestibular rehabilitation; and Plaintiff worked for many years with these longstanding impairments. (R. 18-19); *see Curvin*, 778 F.3d at 651 (ALJ properly found allegations of a disabling sleep impairment inconsistent with claimant's history of working for years with same disorder); *Pepper v. Colvin*, 712 F.3d 351, 364 (7th Cir. 2013) (affirming ALJ's notation that eye impairments were present years before claimant stopped working). Similar to his other alleged impairments, Plaintiff does not cite any evidence the ALJ ignored or cite any evidence in support of his argument the ALJ should have included additional restrictions in the RFC to accommodate his BPPV.

The Court finds the ALJ's reasoning sound as to the restrictions and accommodations he included (and declined to include) within the RFC. Because substantial evidence supports the ALJ's residual functional capacity finding, the Court will not overturn the ALJ's decision on this basis.

5. **CONCLUSION**

For the reasons detailed above, the Court finds the ALJ's decision to be supported by substantial evidence and contain the requisite adequate logical bridges between the evidence and his

17

conclusion. The Court declines to remand this matter. Therefore, Plaintiff's motion for summary judgment (dkt. 18) is DENIED and Defendant's motion for summary judgment (dkt. 23) is GRANTED. The final decision of the Commissioner denying benefits is affirmed.

**ENTERED: March 21, 2022**

 Susan E. Cox,
 United States Magistrate Judge